IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


AUNJELL H.,[1]

        Plaintiff,

  v.

COMMISSIONER of Social Security,

        Defendant.

Case No. 3:18-cv-01440-SU

**OPINION AND ORDER**

SULLIVAN, United States Magistrate Judge:

    Plaintiff Aunjell H. brings this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"). The Commissioner partially denied plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Act. 42 U.S.C. § 401 *et seq.* For the

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and initial of the last name for non-governmental parties and their immediate family members.

following reasons, this case is REVERSED and REMANDED for further proceedings consistent with this Opinion and Order.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed for DIB on July 30, 2014, alleging a disability onset date of April 28, 2013. Tr. 15, 154-55.[2] These claims were denied initially on October 14, 2014, and upon reconsideration on February 9, 2015. Tr. 71-96. Plaintiff subsequently requested a hearing, which was held on December 12, 2016, before Administrative Law Judge ("ALJ") David Johnson. Tr. 31-70. Plaintiff appeared and testified at the hearing, represented by counsel; a vocational expert ("VE"), Ms. Gears, also testified. *Id.* On August 1, 2017, the ALJ issued decision denying Plaintiff's claim. Tr. 15-25. Plaintiff requested Appeals Council review, which was denied June 1, 2018. Tr. 1-6. Plaintiff then sought review before this Court.[3]

## FACTUAL BACKGROUND

Plaintiff was born in February 1982. Tr. 184. Plaintiff experiences disc degeneration, radiculopathy, spondylosis, asthma, osteoarthritis, discectomy, laminectomy, and disc bulge/herniation. Tr. 465, 600-01, 903, 907, 992, 995, 1065, 1134. She stopped working on April 28, 2013, due to her conditions. Tr. 71. Plaintiff completed her GED and previously worked as a collector, nurse assistant, general clerk, furniture salesperson, and fast food worker. Tr. 58, 78, 171-72.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v.*

---

[2] Citations "Tr." are to the Administrative Record. (Docket No. 11).
[3] The parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636. (Docket No. 6).

*Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R.

§§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

### THE ALJ'S DECISION

The ALJ first found that plaintiff met the insured status requirements of the Act through December 31, 2018. Tr. 17. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. *Id.* At step two, the ALJ found that plaintiff had these severe: radiculopathy, spondylosis, disc herniation, and asthma. *Id.* At

step three, the ALJ found that plaintiff did not have an impairment or combination thereof that met or equaled a listed impairment. Tr. 19. The ALJ then found that plaintiff had the RFC to perform medium work with the following limitations: she cannot lift or carry more than 25 pounds occasionally; she cannot perform more than occasional stooping, crouching, or climbing of ladders, ropes, or scaffolds; she cannot have concentrated exposure to extreme cold; and she cannot be exposed to pulmonary irritants. *Id.* At step four, the ALJ found plaintiff unable to perform her past relevant work. Tr. 23. At step five, considering plaintiff's age, education, work experience, and RFC, the ALJ found that plaintiff could perform the representative occupations of office helper, mail clerk, and products assembler. Tr. 24. The ALJ therefore concluded that plaintiff was not disabled. Tr. 25.

## ANALYSIS

Plaintiff argues that the ALJ committed three errors: (1) he omitted her fibromyalgia in the list of severe impairments at step two; (2) he improperly rejected plaintiff's subjective symptom testimony; and (3) he improperly evaluated the medical opinion evidence.

### I.     **Step Two Findings of Severe Impairments and Fibromyalgia**

Plaintiff first argues that the ALJ erred because he failed to find her fibromyalgia to be severe at step two of the sequential analysis.

At step two, the ALJ determines whether the plaintiff has a medically severe impairment or combination of impairments, based upon medical evidence. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A severe impairment is an "impairment or combination of impairments which significantly limits [the plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). "An impairment is not severe if it is merely a 'slight abnormality (or combination of slight

abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'"
*Webb*, 433 F.3d at 686 (quoting Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 (July 2, 1996)). The threshold at step two is low: it is a "de minimis screening device used to dispose of groundless claims." *Webb*, 433 F.3d at 687 (alteration and quotation omitted). Where the plaintiff meets this threshold, the ALJ continues with the sequential analysis, considering the effect of all of the claimant's impairments, whether severe or non-severe. SSR 96-8p, 1996 WL 374184 (July 2, 1996). Reversible error occurs only when a severe impairment excluded at step two causes functional limitations not accounted for in the RFC. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Omissions at step two are harmless if the ALJ subsequently considered the limiting effects of any omitted impairments. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

On examination, Robert Young, M.D., found that plaintiff had twelve to fourteen "very painful" trigger points commonly known for fibromyalgia. Tr. 325. While the Commissioner points out that Dr. Young opined that Plaintiff's history of recent lumbar laminectomy and chronic insomnia might be contributing factors to her positive trigger point test, Dr. Young did not cite these conditions as a cause of his findings.[4] *Id.* The record contains further indicators of fibromyalgia, including plaintiff's reports of chronic fatigue, awakening at night in pain, and

---

[4] The Commissioner argues that plaintiff failed to satisfy the relevant Agency Ruling regarding fibromyalgia. According to SSR 12-2p, Plaintiff was required to show:
    1. History of widespread pain in all quadrants of the body and axial skeletal pain that has persisted for at least three months;
    2. At least eleven positive tender points bilaterally and both above and below the waist; and
    3. Evidence that other disorders that could cause the symptoms or signs were excluded.
2012 WL 3104869, at *2-3 (July 25, 2012). The Commissioner argues that because Dr. Young opined that plaintiff's history of recent lumbar laminectomy and chronic insomnia might be contributing factors to her positive trigger point test, plaintiff failed to satisfy the third prong of SSR 12-2p. The Court disagrees. Dr. Young merely noted that plaintiff's recent lumbar laminectomy and chronic insomnia might *contribute to*, not cause, plaintiff's positive trigger point test.

limited and unpredictable periods of productivity. Tr. 48, 186-93. Medical records also note plaintiff's fibromyalgia diagnosis as "ongoing." *See, e.g.*, Tr. 952, 955. The ALJ, however, failed to mention plaintiff's fibromyalgia in the step two analysis, or to consider any specific fibromyalgia-related limitations in the RFC. Tr. 17-19. The ALJ's failure to consider plaintiff's fibromyalgia at step two despite ample documentation of her fibromyalgia in the record therefore constitutes harmful error. *Lewis*, 498 F.3d at 911; *see also Amber Christine H. v. Comm*'r, No. 6:18-cv-00215-BR, 2018 WL 6524283, at *6 (D. Or. Dec. 11, 2018) ("Here the ALJ failed to determine whether Plaintiff's fibromyalgia equals a Listing Impairment, whether any limitations as a result of Plaintiff's fibromyalgia would impact Plaintiff's RFC, and how that impact would affect findings at Step Four and Five of the sequential evaluation.").

Although plaintiff did not explicitly allege disability based on fibromyalgia, Tr. 171, this does not absolve the ALJ of the obligation to have considered the condition, and its effects and limitations, especially in conjunction with those the ALJ found to be plaintiff's severe impairments "While a 'not severe' impairment may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim." *Celaya v. Halter*, 332 F.3d 1177, 1182 (9th Cir. 2003) (quoting SSR 96-8p, at *5, 1996 WL 374184 (July 2, 1996)). In *Celaya*, the ALJ's failure to consider the impact of obesity in other severe impairments was reversible error even though the plaintiff had not explicitly raised obesity as a contributing factor to disability. *Id.* "Given the potential effect of obesity on these conditions, the ALJ had a responsibility to consider their interactive effect." *Id.* Thus, the ALJ's failure to even mention fibromyalgia in the decision despite the ample evidence of its severity and effects on plaintiff was error, even though plaintiff did not explicitly assert fibromyalgia as a basis for her claim of disability.

On remand, the ALJ shall consider plaintiff's fibromyalgia at step two and incorporate all fibromyalgia-related limitations into the RFC.

## II. Plaintiff's Testimony

Plaintiff next argues that the ALJ improperly rejected her subjective symptom testimony.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. First, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptoms, which plaintiff unquestionably did here. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptoms, but only to show that it could reasonably have caused some degree of the symptoms. *Id.* In the second stage of the analysis, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ must specifically identify the testimony he does not credit and must explain what evidence undermines the testimony. *Holohan*, 246 F.3d at 1208. General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Id.* In order to discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

Plaintiff testified that she was unable to work due to significant buttock pain and stabbing pain down her right leg. Tr. 40. She testified that she must spend most of her day in a recliner. Tr. 46, 187. She was unable to climb the stairs to her bedroom, could only sit in a car for fifteen minutes, and occasionally required a cane for walking. Tr. 40, 45, 47.

The ALJ rejected plaintiff's testimony. Tr. 17-22. First, he found her allegations inconsistent with the record as a whole. *Id.* An ALJ may reject testimony that is inconsistent with the medical and other evidence. *Carmickle*, 533 F.3d at 1161. Here, the ALJ noted evidence that plaintiff regularly left the house to care for her disabled son, including attending appointments at least five days per week. Tr. 41-43, 48. Plaintiff also was able to stack firewood, work in the yard, and work on the roof of her home. Tr. 331, 779. After her one-hour ride to the administrative hearing, Plaintiff reported that her back pain had not changed from baseline. Tr. 51. This evidence explicitly contradicts plaintiff's testimony and was therefore a clear and convincing reason to reject plaintiff's statements. *Carmickle*, 533 F.3d at 1161. Because the ALJ provided at least one legally sufficient reason for rejecting plaintiff's statements, his credibility evaluation was free of harmful error.

### III. Medical Opinion Evidence

Plaintiff next argues that the ALJ failed to give appropriate weight to the opinion of treating physician Charles Barich, M.D., and examining physician Raymond Nolan, M.D. She also argues that the ALJ erred in failing to resolve a conflict between the opinions of consultative physicians Susan Moner, M.D., and Roy Brown, M.D.

The weight given to the opinion of a physician depends on whether the physician is a treating, examining, or nonexamining physician. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing 20 C.F.R. § 404.1527). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Id.* (treating physician); *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence

in the record. *Orn*, 495 F.3d at 632; *Widmark*, 454 F.3d at 1066. "An ALJ can satisfy the 'substantial evidence' requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quotation omitted).

Dr. Nolan performed a consultative examination of plaintiff in October 2016 and opined that plaintiff should limit bending, twisting, and turning of the trunk to occasional, and lift and carry no more than 10 pounds. Tr. 22. The ALJ rejected Dr. Nolan's opinion because it was rendered shortly before plaintiff underwent corrective surgery for disc reherniation, and his "assessment reflects the claimant's condition during this temporary exacerbation." Tr. 22. It was reasonable for the ALJ to assign less weight to an assessment of plaintiff's pre-surgery condition.

Dr. Barich was plaintiff's treating physician. He opined that plaintiff can work only four hours per week and could lift only 10 pounds. Tr. 779-80. The ALJ rejected Dr. Barich's opinion because it was inconsistent with the longitudinal record (which showed normal examination findings throughout the relevant period), and because Dr. Barich restricted his limitations to a six-month period. Because a claimant's symptoms must last for a 12-month period to qualify as disabling, the ALJ reasonably rejected Dr. Barich's opinion as irrelevant to the ultimate disability determination.

The ALJ erred in evaluation consultative physicians Drs. Moner and Brown's opinions. Drs. Moner and Brown reviewed the evidence and found that plaintiff could perform work, but they disagreed as to how much plaintiff weight could lift: Dr. Moner opined that Plaintiff can lift ten pounds frequently, whereas Dr. Brown opined that plaintiff can lift twenty pounds frequently. Tr. 76, 87. The ALJ implicitly rejected Dr. Moner's lifting restriction when he limited plaintiff

to performing medium work that does not require lifting or carrying more than 25 pounds occasionally. Tr. 19, 76, 87. The ALJ, however, provided no explanation for this finding, stating that he credited both physicians' opinions. The Court finds that the ALJ erred by failing to resolve this conflict in the medical record.

## II. Remedy

It lies within the district court's discretion whether to remand for further proceedings or to order an immediate award of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citation and italics omitted). This "credit-as-true" rule has three steps: first, the court "ask[s] whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion"; second, if the ALJ has erred, the court "determine[s] whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful"; and third, if the court "conclude[s] that no outstanding issues remain and further proceedings would not be useful," it may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves not the slightest uncertainty as to the outcome of the proceeding." *Treichler*, 775 F.3d at 1100-01 (quotations, citations, and alterations omitted). The court may then "remand to an ALJ with instructions to calculate and award benefits." *Garrison*, 759 F.3d at 1020. If, "even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates

serious doubt that a claimant is, in fact, disabled," the court should remand for further proceedings. *Id.* at 1021.

At the first step of the credit-as-true analysis, the Court finds that the ALJ erred his evaluation of the medical evidence, in failing to consider plaintiff's fibromyalgia diagnosis throughout the sequential analysis, and in failing to resolve a conflict in the consultative physicians' opinions. At step two, the Court finds that there remain outstanding issues to be determined and that further administrative proceedings would be useful, specifically, to (1) consider plaintiff's fibromyalgia throughout the sequential analysis, (2) determine how much weight plaintiff is capable of lifting, (3) formulate a new RFC, and (4) assess whether plaintiff can perform jobs that exist in the national economy. Remand for an immediate award of benefits is therefore not appropriate. Thus, Court remands this case for further proceedings in accordance with this Opinion and Order.

## CONCLUSION

For these reasons, pursuant to 42 U.S.C. § 405(g), sentence four, the Court REVERSES the Commissioner's decision and REMANDS this case for further administrative proceedings in accordance with the above.

IT IS SO ORDERED.

DATED this 13th day of August, 2019.

/s/ Patricia Sullivan
PATRICIA SULLIVAN
United States Magistrate Judge